2021 IL App (1st) 161828-U

THIRD DIVISION
March 31, 2021

No. 1-16-1828

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 27440 |
| | ) | |
| SHALAWN WRIGHT, | ) | Honorable |
| | ) | Evelyn B. Clay, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Reversed and remanded. Petition stated gist of claim of due process violation based on defective indictment.

¶ 2     In November 2000, having been convicted of murder a month earlier and while awaiting sentencing, defendant Shalawn Wright attempted to escape from Cook County Jail. In 2002, he was convicted of attempted escape and was given a five-year sentence to run consecutively to his 35-year sentence for his murder conviction.

¶ 3    Fourteen years later, defendant filed a postconviction petition. He raised three issues. One related to the trial court's improper correction of his mittimus. Second, he claimed the circuit court did not file its judgment order of dismissal within the 90-day time limit provided in the Postconviction Hearing Act.

¶ 4    And third, he alleged that the State failed to prove him guilty beyond a reasonable doubt because it convicted him under a statute that did not apply to his conduct. To put a finer point on this claim, defendant's indictment alleged that he attempted to escape from "Cook County Jail Division Eleven, Adult Division in violation of chapter 730 Art 5 section 3-6-4(a)." The statute referenced falls within the Unified Code of Corrections. See 730 ILCS 5/3-6-4(a) (West 2000). Section 3-6-4(a) prohibits inmates committed to the Illinois Department of Corrections (IDOC) from escaping or attempting to escape from IDOC institutions. See *id.*; see also *id.* § 3-1-2(c).

¶ 5    The problem, defendant claimed, is that he was not charged with attempted escape from an IDOC facility; he was charged with attempting to escape from Cook County Jail under the supervision of the county, not IDOC. See 730 ILCS 125/1 (West 2000) (County Jail Act, requiring "one or more jail facilities for the use of each county within this State."); *id.* § 2 ("The Sheriff of each county in this State shall be the warden of the jail of the county, and have the custody of all prisoners in the jail.").

¶ 6    Defendant argued that he could not be convicted of violating section 3-6-4(a) of the Unified Code of Corrections for an escape from a county jail. And in our initial Order entered pursuant to Illinois Supreme Court Rule 23 (eff. April 1, 2018) ("Rule 23 Order"), we found his argument to be a facially valid one, if not an outright winner. See *People v. Marble*, 91 Ill. 2d 242, 247-48 (1982) (defendant who escaped from Cook County Jail could not be convicted under

section 3-6-4(a), as defendant was not "committed person"—prisoner committed to IDOC—at time of escape); *People v. Simmons*, 88 Ill. 2d 270, 275 (1981) (noting that section 3-6-4(a) covers specific offense of escape "from a facility of the Adult Division of the State corrections department, as opposed to a local or juvenile facility.").

¶ 7 As defendant notes on appeal (and as he referenced vaguely in his petition), the Criminal Code of 1961 provided a broader escape statute that clearly covered escapes from a county jail. See *Simmons*, 88 Ill. 2d at 275; *Marble*, 91 Ill. 2d at 247; 720 ILCS 5/31-6 (West 2000). But defendant was not charged under that statute.

¶ 8 Initially, the State had no comment on the merits of this legal claim. But the State now concedes not only that defendant might have been convicted under the wrong statute but that, in fact, he *was* convicted under the wrong statute.

¶ 9 The question is what we do with this information. Defendant framed it on appeal as a sufficiency-of-the-evidence challenge—defendant was not proven guilty of trying to escape from an IDOC facility, because Cook County Jail isn't an IDOC facility. But a sufficiency-of-the-evidence claim is not cognizable under the Postconviction Hearing Act. *People v. Frank*, 48 Ill. 2d 500, 504 (1971). In any event, we didn't see it as a reasonable-doubt challenge. In our initial Rule 23 Order, we found defendant's claim to be one for actual innocence. Our thinking was that if defendant could not possibly have committed the crime with which he was charged, he was, at least in some sense, "actually innocent."

¶ 10 The State has prevailed on us, however, that we were looking at this the wrong way. This was not an actual-innocence case. This was a case involving a defect in the indictment. And the law is relatively clear on this topic.

¶ 11    Due process includes the right to reasonable notice of the charge and an opportunity to be heard. *In re Oliver*, 333 U.S. 257, 273 (1948). Due process thus requires "that a charging instrument adequately notify a defendant of the offense charged with sufficient specificity to enable a proper defense." *People v. Baldwin*, 199 Ill. 2d 1, 12 (2002). As our supreme court explained:

> "[o]ne of the oldest and most fundamental components of due process is the general rule that criminal proceedings be initiated by an information or indictment containing:
>
>> 'all the facts and circumstances which constitute the offence, ... stated with such certainty and precision, that the defendant ... may be enabled to determine the species of offence they constitute, in order that he may prepare his defence accordingly ... and that there may be no doubt as to the judgment which should be given, if the defendant be convicted.' " *Id*. at 12-13 (quoting J. Archbold, Pleading and Evidence in Criminal Cases 44 (15th ed. 1862)).

¶ 12    Given the obvious due-process concern, the failure to properly charge an offense may be raised at any time. *People v. DiLorenzo,* 169 Ill. 2d 318, 321 (1996); *People v. Stephenson*, 2016 IL App (1st) 142031, ¶ 17. But the timing is not irrelevant; the standards are quite different, depending on whether an indictment is challenged before or after trial.

¶ 13    "If an indictment or information is challenged in a pretrial motion, it 'must strictly comply' " with statutory pleading requirements. *Stephenson*, 2016 IL App (1st) 142031, ¶ 18 (quoting *People v. Rowell,* 229 Ill. 2d 82, 93 (2008)); see also *DiLorenzo,* 169 Ill. 2d at 321-22. And that is as it should be, because if a defendant challenges the indictment before trial, the court

has the chance to rule on the alleged defect, and if one is found, the prosecution may cure the defect via an amended or superseding indictment.

¶ 14    But if the defendant waits until after trial or, as here, 14 years after his conviction to allege the indictment defect, it would be wrong and unfair to call this argument a claim of "actual innocence," because the remedy for that claim is that the defendant goes free, without giving either the court or the prosecution the chance to cure the defect. He profits, in other words, from failing to raise this defect when he should have—before trial, or at least before his conviction. We would be creating a perverse incentive for a defendant to keep quiet about a defect in the indictment until after his conviction, then raise it tardily and ask the court to set him free.

¶ 15    That is why the law requires, instead, that in a post-conviction challenge to the indictment, a defendant must show he was " 'prejudiced by the defect in the charging instrument.' " *Stephenson*, 2016 IL App (1st) 142031, ¶ 18 (quoting *People v. Espinoza,* 2015 IL 118218, ¶ 23)). In this context, "prejudice" means that the variance between the charging document and the proof at trial is "is material and could " 'mislead the accused in making his defense or expose him to double jeopardy.' " *Stephenson*, 2016 IL App (1st) 142031, ¶ 19 (quoting *People v. Davis,* 82 Ill. 2d 534, 539 (1980), quoting *People v. Figgers,* 23 Ill. 2d 516, 518–19 (1962)); see also *People v. Pujoue,* 61 Ill. 2d 335, 339 (1975).

¶ 16    Establishing prejudice may be difficult here. Generally, defects in a statutory citation in an indictment do not rise to the level of a due process violation if the indictment adequately informs the defendant of the charges against him, and the mis-citation does not prejudice the defendant's ability to answer the charges and mount a defense. See *People v. Burke*, 362 Ill. App. 3d 99, 103 (2005); *cf. People v. Melton,* 282 Ill. App. 3d 408, 415 (1996) ("Although the

statute cited in the charging documents was no longer in effect, the criminal offense of child endangerment was still embodied in the Criminal Code. Accordingly, defendants' claim that they were convicted of a nonexistent crime is without merit.").

¶ 17    Here, the indictment informed defendant that he was accused of trying to escape from Cook County Jail, where he was, in fact, being housed at the time. And his defense at trial was simply that he did not try to break out; his cell mate did, but he wasn't part of the plan. His defense did not seem to rise or fall on the proper classification of the Cook County Jail as an IDOC facility versus a local jail.

¶ 18    But it would be premature to make a determination of prejudice at this stage. For one thing, this was not your garden-variety defect in the indictment. This was not a case where the indictment, for example, merely misidentified the victim's name. See *Stephenson*, 2016 IL App (1st) 142031, ¶ 22; *People v. Montgomery,* 96 Ill. App. 3d 994, 997–98 (1981) (indictment identified wrong police officer allegedly assaulted by defendant). Nor is this a case where the defendant was charged with an offense that still existed, and which he committed, though the statutory language for the offense had been moved elsewhere within the Criminal Code. See *Melton,* 282 Ill. App. 3d at 415; *People v. Dismore*, 33 Ill. App. 3d 495, 498 (1975) (conviction under repealed deceptive-practices statute was not void, as law remained on books under Credit Card Law, and defendant did not claim prejudice). Here, the proper criminal statute was on the books at the time, but the State charged him under a different statute, incorrectly so. Defendant literally could not have committed the crime he was convicted of committing.

¶ 19    And second, and more to the point, those cases cited above were decided on direct appeal, where we held defendant's failure to claim prejudice against him (*Melton,* 282 Ill. App.

3d at 415-16; *Dismore*, 33 Ill. App. 3d at 498), or we found a claim of prejudice to be insufficiently developed or without merit (*Montgomery,* 96 Ill. App. 3d at 997–98; *Stephenson*, 2016 IL App (1st) 142031, ¶ 22).

¶ 20    Here, in contrast, we are at the first stage of a postconviction proceeding, reviewing a petition drafted by a *pro se* prisoner, where we view the threshold of survival as low. See *People v. Maybrey*, 2016 IL App (1st) 141359, ¶ 34. We must decide if defendant's claim of prejudice here " 'has no arguable basis *** in law or in fact.' " *People v. Papaleo*, 2016 IL App (1st) 150947, ¶ 19 (quoting *People v. Hodges*, 234 Ill. 2d 1, 12 (2009)). It seems premature to reach that determination at this stage. Defendant should be given a chance to obtain counsel and argue his claim at second-stage proceedings.

¶ 21    The State has raised procedural barriers to defendant's petition. For one, it is untimely, because he had to file his petition within three years of his conviction (since he did not file a direct appeal), unless he "alleges facts showing that the delay was not due to his or her culpable negligence." See 725 ILCS 5/122-1(c) (West 2016).

¶ 22    Timeliness objections cannot be raised at the first stage. *People v. Perkins,* 229 Ill. 2d 34, 48 (2007) (allegations about timeliness or excusable neglect "are irrelevant at the first stage of the proceedings"); *People v. Boclair*, 202 Ill. 2d 89, 99-102 (2002) (same). In any event, we would think a court would be hard-pressed to find "culpable negligence" when the defect in the indictment escaped the attention of a circuit judge, a prosecutor, and a defense attorney at the original trial.

¶ 23    The State also claims forfeiture. In fairness to the State, the State saw a disconnect between what the postconviction petition alleged—challenging the legal applicability of the

charged statute to defendant's conduct—and what defendant's appellate counsel argued—sufficiency of the evidence—which led the State to argue that appellate counsel was raising claims not raised below, resulting in forfeiture. But we think there has been enough confusion on this issue (much of it caused by this Court) that we find no basis for forfeiture.

¶ 24    Our original Rule 23 Order finding a viable actual-innocence claim was in error, and we have withdrawn it. We now agree with the State that this is a claim of a defective indictment for which defendant will have the burden of showing prejudice.

¶ 25    In light of the above, we need not consider defendant's claim that his petition should advance to the second stage because the trial court failed to file a written dismissal order within 90 days after the petition was filed and docketed.

¶ 26    On remand, defendant's challenge to the mittimus should be raised by motion, pursuant to Illinois Supreme Court Rule 472(e) (eff. May 17, 2019).

¶ 27    The judgment of the circuit court is reversed. The cause is remanded for advancement to the second stage of postconviction proceedings.

¶ 28    Reversed and remanded.